UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| YVETTE M. ELDRIDGE, | 01-CV-0557E(Sc) |
| Plaintiff, | |
| | MEMORANDUM |
| -vs- | |
| | and |
| JO ANNE B. BARNHART, | |
| Commissioner of Social Security, | ORDER[1] |
| Defendant. | |

---

Plaintiff filed this action on August 7, 2001 seeking review of an administrative decision denying her Social Security disability benefits. Plaintiff filed an application for disability insurance benefits on April 7, 1999, which was denied initially and on reconsideration. Plaintiff then appeared before an Administrative Law Judge ("ALJ"), who, after a *de novo* review of her application, concluded that she was not disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §423; 20 C.F.R. §404 *et seq.* (hereafter "Regulations"). The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner") on June 15, 2001. Plaintiff then commenced this action. The undersigned referred the matter on August 14, 2001 to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. §636(b)(1)(B) for a determination of the factual and legal issues presented by the action. Judge Scott, on February 3, 2005, issued a Report

---

[1]This decision may be cited in whole or in any part.

and Recommendation ("R&R") recommending that the matter be remanded to the Commissioner for further proceedings. The Commissioner filed objections ("Objections") on February 18, 2005 and plaintiff responded on April 6, 2005. For the reasons set forth below, the Objections will be sustained, the R&R will not be adopted and the case will be dismissed.

The R&R set forth the facts in detail and only a brief reiteration is necessary here. Plaintiff was born on February 13, 1967 and has not been engaged in any substantial gainful activity since February 2, 1998, the date on which her alleged disability occurred. Plaintiff was a newspaper distributor for the *Buffalo News* when she had a motor vehicle accident. As a result of her accident, plaintiff claims that she has suffered from neck, back and shoulder pain, headaches, fibromyalgia, chronic pain syndrome, myofascial pain, numbness in her right arm and tingling in her lower extremities. Plaintiff allegedly exacerbated her injuries in another accident on May 26, 1999. The ALJ, following the five-step analysis for evaluating disability claims, determined that plaintiff has a "severe impairment", but that her impairments and symptoms do not meet or equal the medical criteria contained in the Listings of Impairments in appendix 1 of the Regulations. *See* 20 C.F.R. §404.1520(a)(4)(iii);[2] *Rosa* v. *Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The ALJ then

---

[2] 20 C.F.R. §404.1520(a)(4) states, in pertinent part:
"(4) The five-step sequential evaluation process. *** If we can find that you are disabled or not disabled at a step, we make our determination or decision and we
(continued...)

evaluated plaintiff's residual functional capacity to perform her past work or any other work existing in significant numbers. The ALJ found that, while plaintiff was not able to return to her prior work as a newspaper distributor, she still retained the residual functional capacity to perform the full range of light work and, therefore, was not disabled.

In making his recommendations, Judge Scott concluded that the ALJ's decision was not supported by substantial evidence in the record. In particular, the R&R determined that (1) the ALJ did not adequately explain his reason for discounting Dr. Pratibha Bansal's opinion, (2) the ALJ rejected Dr. Paul L. Fazekas's

---

²(...continued)
do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. \*\*\* These are the five steps we follow:

    (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. \*\*\*
    (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. \*\*\*
    (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. \*\*\*
    (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
    (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled."

opinion without adequately developing the record as to any emotional or nonexertional impairments that plaintiff may be suffering and (3) the ALJ failed to determine the severity of plaintiff's emotional impairments and did not obtain testimony from a vocational expert as to what extent the nonexertional conditions noted by Dr. Fazekas would affect plaintiff's ability to work.  The Commissioner's Objections assert that the ALJ's oversight of Dr. Bansal's opinion is, at most, harmless error, that the ALJ properly rejected the opinion of Dr. Fazekas because it was not supported by or consistent with other evidence and that there was no need to call a vocational expert.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" and may adopt those parts of the R&R to which no *specific* objection is raised, so long as such are not clearly erroneous. 28 U.S.C. §636(b)(1)(c); *see also Black* v. *Walker*, 2000 WL 461106, at *1 (W.D.N.Y. 2000).  Conversely, the undersigned must make a *de novo* determination with respect to those portions of the R&R to which specific objections have been made. 28 U.S.C. §636(b)(1)(c); *United States* v. *Raddatz*, 447 U.S. 667, 675-676 (1980); *Sieteski* v. *Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y. 2000). Objections to an R&R must satisfy Rule 72.3(a)(3) of the Local Rules of Civil Procedure ("LRCvP"), which states that

> "[t]he written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for such objection and shall be supported by legal authority."

The Objections satisfy the requirements of LRCvP 72.3(a)(3) and the Court will make a *de novo* determination of the issues raised in the Objections.

It is not within this Court's province to determine *de novo* whether plaintiff was disabled. *Halloran* v. *Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Rather, this Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence. *Ibid.* "Substantial evidence" means such relevant evidence that is sufficient to persuade a reasonable mind to support a conclusion. *Ibid* (citing *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971)). For purposes of Social Security Insurance and disability insurance benefits, a person is disabled if unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).

In making his determination, the ALJ evaluated the following medical evidence: (1) Dr. David Hoffman conducted a neurological examination and found that everything was generally normal, and such examination was further supported by an independent neurological evaluation performed by Dr. Joseph C. Tutton; (2) Dr. David L. Bagnall, plaintiff's treating physician, stated that plaintiff originally had a temporary partial disability of moderate degree, which prevented her from

performing her duties as a newspaper distributer, but that, as of April 20, 1998, she had no significant disability and that it as important for her to get back to some level of function; (3) Dr. Bansal, to whom plaintiff was referred by Dr. Bagnall, helped plaintiff with her pain and reported on February 3, 2000 that plaintiff's pain had been markedly reduced; (4) Dr. Bansal referred plaintiff to a chiropractor, Dr. John E. Weisberg, who on July 8, 1999 — shortly after plaintiff's second accident — asserted that plaintiff was totally disabled; (5) Dr. Fazekas conducted a psychological evaluation of plaintiff on June 24, 1999 and diagnosed plaintiff with a mood disorder due to chronic pain with major depressive-like episodes, which, according to Dr. Fazekas, would compromise her in a work-related activity; (6) state physicians evaluated plaintiff on July 21, 1999 and on October 28, 1999 and determined that she could perform a wide range of medium work; and (7) state psychologists reviewed the record and opined that plaintiff had a non-severe affective disorder.

    The ALJ proceeded to evaluate plaintiff's subjective complaints and found that her claim of total disability was not fully credible. *See, e.g., Taylor* v. *Barnhart*, 83 Fed. Appx. 347, 349 (2d Cir. 2003) ("While subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings, the ALJ is nonetheless empowered to exercise discretion to arrive at an independent judgment, in light of medical findings and other evidence, regarding

the true extent of the pain alleged by the claimant."). The ALJ made this finding in light of the medical evidence and facts presented at the hearing — *viz.*, that (1) plaintiff's treating physician, Dr. Bagnall, stated that he could not find an objective reason why she could not return to some type of work activity, (2) Dr. Bansal notes that plaintiff's condition had been improving with treatment and, as of February 3, 2000, plaintiff did not require constant treatment, but only treatment on an as needed basis, (3) plaintiff has not received constant treatment for any mental impairments and (4) plaintiff's daily activities suggest that she can perform moderately physical activities. The ALJ found that plaintiff did not have a severe mood disorder and thus was not significantly limited in her mental ability to do basic work activities and would not result in significant nonexertional limitations that would reduce her vocational base. Based on plaintiff's age, education, residual functional capacity for a full range of medium work and physical exertion ability, the ALJ concluded that plaintiff was not disabled.

The Objections claim that the ALJ properly accorded little weight to Dr. Fazekas's opinion and, based on a review of the record and the ALJ's decision, the Court agrees with the Objections. The ALJ reviewed the evidence and reasonably concluded that Dr. Fazekas's opinion was not supported by the medical evidence or by Dr. Fazekas's own evaluation and findings. Furthermore, the ALJ noted that Dr. Fazekas's evaluation conflicted with the state psychologists' report, which was

more consistent with the medical evidence.  Such amounts to "relevant evidence [that] a reasonable mind might accept as adequate to support" the ALJ's determination that Dr. Fazekas's assessment should be given little weight.  *See Richardson*, at 401.  In fact, the totality of the evidence supports the ALJ's conclusion and warrants the little weight given to Dr. Fazekas's conclusion.

Next, the Objections maintain that there was no need for vocational expert testimony and the Court will find that such is supported by the ALJ's findings and the Regulations.  The ALJ reviewed the evidence and determined that plaintiff did not have a severe mood disorder, which does not significantly limit her mental ability to do basic work activities and would not result in significant nonexertional limitations that would reduce the vocational base.  These findings are supported by substantial evidence and based on the Regulations.  The ALJ concluded that plaintiff has the residual functional capacity to perform the full range of light work, and concluded, based on the Regulations — to wit, the Medical-Vocational Rules 201.27 and 202.20 — that plaintiff was not disabled.  A vocational expert is only necessary where there is evidence that plaintiff's nonexertional limitations "so narrow[] [her] possible range of work as to deprive [her] of a meaningful employment opportunity."  *Bapp* v. *Bowen*, 802 F.2d 601, 605-606 (2d Cir. 1986) (alterations in original); *see also Taylor*, at 350 (finding that the ALJ was entitled to rely on the Medical-Vocational Rules after a finding that the plaintiff's pain was

not disabling). Therefore, the ALJ was proper in not requiring vocational expert testimony and the Objections will be sustained.

Finally, the Objections claim that the ALJ's failure to discuss Dr. Bansal's January 11, 1999 opinion was harmless error. The Court agrees that said failure was harmless error because, subsequently, on February 3, 2000, Dr. Bansal stated that plaintiff's condition had been improving with treatment and that she no longer required constant treatment, but only treatment on an as needed basis. Furthermore, Dr. Bansal's January 11, 1999 opinion only stated that plaintiff was not able to perform her newspaper distribution job, with which the ALJ agreed. Thus, Dr. Bansal's opinion is consistent with the ALJ's determination and it was error to hold otherwise.

Accordingly, it is hereby **ORDERED** that the Commissioner's Objections are sustained, that Judge Scott's Report and Recommendation dated February 3, 2005 (docket no. 16) is not adopted, that plaintiff's claims are dismissed and that the Clerk of the Court shall close this case.

DATED:   Buffalo, N.Y.

March 14, 2006

*/s/ John T. Elfvin*
JOHN T. ELFVIN
S.U.S.D.J.